# UNITED STATES DISTRICT COURT
for the
District of New Jersey

| | |
|---|---|
| JUDITH LABARBERA | Case No. _____ *(to be filled in by the Clerk's Office)* |
| *Plaintiff(s)* | |
| –v– | Jury Trial: *(check one)* [X] Yes [ ] No |
| KEAN UNIVERSITY NATHAN WEISS GRADUATE COLLEGE ("KEAN") | |
| *Defendant(s)* | |

# COMPLAINT FOR A CIVIL CASE

For her Complaint against Defendant Kean University Nathan Weiss Graduate College ("Kean" or "Defendant"), for violations of federal and state law Judith LaBarbera ("Plaintiff"), states and alleges as follows:

## INTRODUCTION

1. Judith LaBarbera, an experienced Speech and Language Pathologist, entered Kean University's doctoral program in Speech and Language Pathology in the Fall of 2018 with the goal of advancing her career. She invested substantial time and financial resources, totaling over two years of study and $25,000. However, Ms. LaBarbera later discovered a hidden requirement for program completion: a mandatory comprehensive examination, or "comps," which would determine her eligibility to graduate. This requirement was not disclosed at the program's outset; it was only indirectly mentioned a year later, when Ms. LaBarbera and her classmates were asked to acknowledge receipt of a program handbook, where the exam requirement was noted.

2. In addition to the lack of transparency, Ms. LaBarbera faced significant bias during the evaluation process following the completion of her comprehensive exam. Despite routinely receiving positive feedback from faculty familiar with her work, her comprehensive exam was graded unusually harshly by the assigned evaluators. One of the evaluators assigned to her comprehensive exam had a documented history of retaliatory and unprofessional conduct toward Ms. LaBarbera and other students, raising serious concerns about the impartiality of the grading process. This inconsistency, combined with the lack of standardized grading criteria, contributed to a skewed assessment of her performance.

3. Ms. LaBarbera committed to the program without notice that a comprehensive exam

would be required for graduation. When she did take that exam, the process was compromised by inconsistent and unfair evaluation, preventing her from graduating and rendering her investment lost.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, and the Age Discrimination Act of 1975, 42 U.S.C. § 6101 et seq.

5. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise out of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in this District and Defendants reside in this District.

## PARTIES

7. Plaintiff, Judith LaBarbera, is an adult individual residing in New Jersey. She enrolled in the clinical doctoral program in Speech and Language Pathology at Kean University in Fall 2018. Plaintiff resides at 42 Republic Drive, Monroe, NJ 08331.

8. Defendant, Kean University is a public university located in Union, New Jersey, providing higher education services, including the clinical doctoral program in Speech and Language Pathology. The Defendant will be served at 1000 Morris Ave, Union, NJ 07083.

## FACTUAL BACKGROUND

**A. Kean University**

9. Kean University, located in Union, New Jersey, is a public university known for its commitment to providing high-quality education across a diverse range of disciplines.

10. As an institution with a long-standing reputation in higher education, Kean University advertises its programs as being designed to meet rigorous academic standards and to prepare students for professional success in their respective fields.

**B. Judith LaBarbera**

11. Judith LaBarbera, a seasoned professional with over 25 years of experience in the field of Speech & Language Pathology, began her doctoral journey at Kean University in Fall 2018. With an extensive background in the field, Ms. LaBarbera had high hopes of advancing her career further by earning a clinical doctoral degree from a reputable institution.

12. Ms. LaBarbera invested $25,000 and dedicated two years of study to this program.

13. Throughout her studies, Ms. LaBarbera maintained a strong academic record, consistently receiving positive feedback from her professors. As a Speech & Language Pathology Supervisor overseeing 21 schools, 80 speech pathologists, and approximately 3,000 students, Ms. LaBarbera balanced her demanding professional responsibilities with her academic commitments.

14. Ms. LaBarbera was the oldest student in the program by 8-10 years.

15. During her time at Kean, Ms. LaBarbera was facing challenges related to the COVID-19 pandemic, including the transition to distance learning and managing household responsibilities, such as her daughter and son-in-law moving in with their grandchildren.

**C. The Mandatory Comprehensive Exam**

16. At the time of enrollment, neither Ms. LaBarbera nor her peers were informed about the mandatory comprehensive exam ("comps") that were required for graduation.

17. Ms. LaBarbera, like many of her peers, reasonably believed that passing her courses was the only requirement for obtaining her degree.

18. In Fall 2019, one year into the program, Kean required students to sign a handbook that outlined program policies, including the comprehensive exam requirement. This was the first time Ms. LaBarbera, and a number of her peers had learned about the comps. Other students in the same program such as Serena Cuebas, Ursula Glackin, Darya Hinman, Nikki Hurd, Lisa Rose McCabe, Stephanie Reed, Cori Regan, Jennifer Russo, and Jennifer Wallin were also unaware of this requirement until this point.

19. Concerned about this new requirement, Ms. LaBarbera revisited the doctoral program's website, the same resource she had initially used to apply to the program. To her disbelief, she found that, to date, completing and passing a written comprehensive exam was still not a published or advertised requirement of the clinical doctoral program at Kean. This critical omission added to her growing concerns about the program's transparency and integrity.

20. Upon completing her coursework in 2020, Ms. LaBarbera took the comps exam for the first time. According to the handbook, Ms. LaBarbera was required to achieve a "B" grade to pass this requirement. However, Ms. LaBarbera did not make this grade the first time, nor was she able to achieve it on the two other times she was allowed to retake the exam.

**D. Biased Grading of Comps**

21. In direct contradiction to Kean's evaluation of Ms. LaBarbera's comps, when Dr. Edythe Strand, a respected expert with over 40 years of experience in the field of Speech and Language Pathology, reviewed Ms. LaBarbera's work, she did not find the issues Kean had contended were wrong.

22. Ms. LaBarbera's understanding of the questions posed in the comprehensive exam was based on her extensive empirical and clinical knowledge. However, she found the feedback she received after her first and subsequent sittings to be unclear, particularly regarding what

the examiners considered to be the elements of an "ideal answer." This lack of clarity led Ms. LaBarbera to believe that the grading was based on the examiner's subjective and unstated expectations rather than on established academic standards.

23. The feedback Ms. LaBarbera received after her second sitting for the examination was emblematic of the broader issues she encountered. For instance, in response to Question 1, she was told, "These statements are not incorrect, but they certainly do not support a full definition." However, no further elaboration on what constituted a "full definition" was provided. Ms. LaBarbera noted that if there was a robust consensus in the clinical literature surrounding core definitional elements, these would have been stated in the feedback. Their absence indicated that the grading was not based on her grasp of the established consensus but on her fidelity to the examiner's personal views.

24. In another example, Question 3 asked Ms. LaBarbera to discuss the essential elements of the Principals of Motor Learning (PML) and how they differ from traditional articulation therapy. Ms. LaBarbera's response was criticized for not clarifying the difference between traditional articulation therapy and PML, yet the feedback did not align with the nature of the topics under consideration. The feedback Ms. LaBarbera received suggested that the examiners had a specific but unstated knowledge of what they expected, which was not communicated to Ms. LaBarbera.

25. The breakdowns in the evaluation process that Ms. LaBarbera experienced occurred within a unique institutional setting. The clinical and research-oriented nature of the program foreclosed the possibility of students, including Ms. LaBarbera, developing a thorough familiarity with their examiners' specific views on disciplinary topics. This led to unworkable expectations regarding the ability of students to apprehend unstated examiner

expectations during a comprehensive exam, especially in a clinical research program where such exams are not typically the focus.

26. Ms. LaBarbera suggested an alternative evaluation method that would align more closely with the program's clinical and research focus. She proposed that one or more faculty members with relevant expertise evaluate the research paper she developed during the program. This paper reflected her grasp of the established consensus surrounding core disciplinary topics and demonstrated her fulfilment of the program's objectives. Such an evaluation, she argued, would validate her completion of program objectives in a manner that aligns with the University's educational principles and addresses the intellectual concerns regarding unstated examiner expectations. Kean rejected this proposal.

**E. Conflicts with Faculty Member Dr. Namazi**

27. Throughout her time at Kean, Ms. LaBarbera also observed other patterns of bias and unprofessional behavior, for example by Dr. Mahcid Namazi.

28. Dr. Namazi is a key faculty member who was involved in grading her comps.

29. Early in the program, Dr. Namazi referred Ms. LaBarbera to the Writing Center for assistance with her dissertation literature review. However, the Writing Center staff informed her that there were no issues with her writing.

30. Ms. LaBarbera had ongoing interpersonal tensions with Dr. Namazi, stating that she felt disregarded by Dr. Namazi and believed that she was not being treated like the other students in the program. She had a concern that Dr. Namazi did not want her to succeed in the program.

31. Ms. LaBarbera sent an email in December 2020 requesting that someone other than Dr. Namazi grade her exam as an accommodation. However, she never received a response to this email.

32. On February 8, 2022, Ms. LaBarbera met with Ms. Catrina Shaw of the OAAP, accompanied by her attorney at the time, Mr. Howard Mendelson. During this meeting, Ms. Shaw discussed the New Jersey State Policy Prohibiting Discrimination in the Workplace and emphasized the importance of confidentiality and procedures.

33. During this meeting, Ms. LaBarbera explained the details of her complaint, which had been submitted on her behalf by Mr. Mendelson. She alleged that Dr. Mahchid Namazi, Executive Director of the School of Communication Disorders and Deafness, discriminated against her based-on age and familial status.

34. Ms. LaBarbera also stated that she requested an accommodation from Dr. Christian Thorpe, Dean of the Nathan Weiss Graduate College, specifically to have Dr. Thorpe or another qualified individual grade her comprehensive exam instead of Dr. Namazi. This request was made after Ms. LaBarbera's second attempt at the exam, before her third attempt. This request was rejected.

35. Dr. Namazi also had a history of conflicts within Kean and was demoted from her position as Executive Director of the School of Communication Disorders and Deafness during Ms. LaBarbera's time in the program. These internal conflicts likely influenced the fairness and impartiality of the grading process.

36. Further complicating matters, Dean Thorpe, who was involved in overseeing the comps process, was later fired, and escorted off campus due to conflicts with Dr. Namazi. This suggested deeper issues within the program's administration, indicating a lack of stability

and integrity within the department responsible for evaluating Ms. LaBarbera's academic performance.

**F. Requests for Appeal Ignored**

37. After receiving her final failing grade in February 2021, Ms. LaBarbera attempted to initiate Kean's appeal process.

38. Despite multiple inquiries and requests, Kean failed to provide Ms. LaBarbera with the necessary forms or any meaningful opportunity to contest the grade.

## CAUSES OF ACTION

**COUNT I: VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (20 U.S.C. § 1681)**

39. Plaintiff incorporates by reference all prior paragraphs as though fully stated herein.

40. Kean University discriminated against Plaintiff in violation of Title IX of the Education Amendments of 1972 on the basis of her sex and familial status by failing to provide equal access to educational opportunities and by subjecting her to biased grading and retaliatory actions.

41. The key elements for claims under Title IX of the Education Amendments of 1972 in the context of higher education disputes include: (1) the defendant is a federal funding recipient; (2) an appropriate person had actual knowledge of the alleged harassment or discrimination; (3) the defendant was deliberately indifferent to the alleged harassment or discrimination; and (4) the harassment or discrimination was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit. *Adams v. Demopolis City Sch.*, 80 F.4th 1259, 1259, 1270 (11th Cir. 2023), *Williams v. Bd. of Regents of Univ. Sys. of Ga.,* 477 F.3d 1282, 1294-98 (11th Cir. 2007).

42. As per the University website, Kean is a public university governed by a Board of Trustees and managed by a President duly appointed by the Board. The Board currently consists of 15 members appointed by the Governor of New Jersey, as well as a student trustee representative elected annually by the student body. Pursuant to the Higher Education Restructuring Act of 1994, the Board has general supervision and oversight over the University.

43. Defendant Kean, as a recipient public university, was subject to the requirements of Title IX. Throughout Plaintiff's time in the doctoral program, she experienced discrimination based on her sex and familial status, including biased grading practices, a lack of accommodation for her unique circumstances, and disparate treatment compared to younger students in the program. Defendant Dr. Mahcid Namazi, a faculty member responsible for grading Plaintiff's comprehensive exam, and other individuals with supervisory authority at the University, had actual knowledge of the discrimination and harassment through Plaintiff's repeated complaints, including her December 2020 email requesting an alternative grader, and her meetings with the Office of Affirmative Action Programs (OAAP).

44. Despite this knowledge, Kean University and its representatives exhibited deliberate indifference by refusing to take meaningful action to address Plaintiff's concerns, including rejecting her proposed alternative evaluation method and failing to provide clear feedback or grading criteria. This deliberate indifference enabled ongoing discriminatory treatment, which was so severe, pervasive, and objectively offensive that it effectively denied Plaintiff access to the educational benefits and opportunities of the program. Specifically, the discriminatory grading practices and unaddressed grievances precluded Plaintiff from

successfully completing the program, depriving her of the degree and professional advancement she sought.

### COUNT II: VIOLATION OF THE AGE DISCRIMINATION ACT OF 1975 (42 U.S.C. § 6101)

45. Plaintiff incorporates by reference all prior paragraphs as though fully stated herein.

46. The Age Discrimination Act of 1975, 42 U.S.C.S. §§ 6101-6107, mandates that no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subject to discrimination under, any program or activity receiving federal financial assistance. 42 U.S.C.S. § 6102. *Maloney v. SSA*, 517 F.3d 70, 71 (2d Cir. 2008).

47. 42 U.S.C.S. § 6107(4), in turn, defines "program or activity" to encompass the operations of certain types of state and local governmental entities as well as educational institutions and private institutions. *Id.*

48. For claims under the Age Discrimination Act of 1975, the key elements are: (1) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance; and (2) the exclusion or discrimination was on the basis of age. The statute applies to educational institutions and private institutions receiving federal financial assistance. *Maloney v. SSA*, 517 F.3d 70.

49. Kean University discriminated against Plaintiff, the oldest student in the program, by subjecting her to unequal treatment and biased grading practices. She was the oldest student in her doctoral program by 8–10 years, based on her age. Plaintiff was subjected to biased

grading of her comprehensive exams, denial of requested accommodations, and disparate treatment compared to younger students. Despite maintaining an exemplary academic record and fulfilling all coursework requirements, Plaintiff was denied the benefit of completing her degree program due to opaque and subjective grading practices that disproportionately impacted her. This discrimination, rooted in Plaintiff's age, excluded her from the educational opportunities and professional advancement promised by the program, in violation of the Age Discrimination Act of 1975.

**COUNT III: BREACH OF CONTRACT**

50. Plaintiff incorporates by reference all prior paragraphs as though fully stated herein.

51. Plaintiff entered into a contractual agreement with Kean University, which obligated the University to provide a transparent, fair, and rigorous academic program. Ms. LaBarbera entered into a contractual relationship with Kean upon enrolling in the clinical doctoral program in Speech & Language Pathology in Fall 2018. Ms. LaBarbera paid approximately $25,000 in tuition and fees, in exchange for the education and degree program as represented by Kean.

52. The express terms of the contract were embodied in the written materials provided at the time of enrolment, including promotional materials, course descriptions, and the curriculum outlined by the university.

53. The implied terms of the contract were based on the reasonable expectations Plaintiff had as a student, specifically that Defendant would act in good faith, providing all material information regarding graduation requirements upfront, allowing Ms. LaBarbera to make informed decisions about her education.

54. Defendant breached the contract by failing to disclose a material graduation requirement—a mandatory comprehensive exam (referred to as "comps")—until over a year after Ms. LaBarbera's enrolment in the program. This requirement was not communicated during the enrolment process or in any course materials provided at the time.

55. Courts have recognized that commitments made in university policies, such as those ensuring a fair and impartial process, can form the basis of a breach of contract claim if procedural irregularities are alleged *Doe v. Stonehill Coll., Inc.*, 55 F.4th 302, *Gash v. Rosalind Franklin Univ.,* 117 F.4th 957. Furthermore, *Roe v. St. John's Univ.,* 91 F.4th 643, 657 s2d Cir. 2024) suggests that procedural irregularities are even more significant, than outside pressure such as discrimination. *Gash v Rosalind Franklin Univ.* 117 F.4th 957 illustrates how procedural irregularities, when combined with allegations of policy violations, can form the basis of a breach of contract claim if they suggest discriminatory intent.

56. A student's breach of contract claim must involve decisions that were arbitrary, capricious, or made in bad faith. *Gash v. Rosalind Franklin Univ*., 117 F.4th 957, 959 (7th Cir. 2024). Defendant Kean University breached its contractual obligations to Plaintiff by implementing arbitrary, capricious, and bad-faith decisions regarding the comprehensive exam requirement. Plaintiff was not informed of the exam at the time of enrollment, and the requirement was introduced only after she had invested significant time and money in the program. The grading process was opaque, subjective, and inconsistent with established academic standards, as evidenced by the lack of clear feedback and rejection of Plaintiff's reasonable alternative evaluation proposal.

57. The disclosure of the comprehensive exam came in Fall 2019, more than a year after Ms. LaBarbera had invested substantial time and money into the program. This breach deprived

Ms. LaBarbera of the opportunity to make an informed decision about whether to continue in the program or even enrol in the program, to begin with.

58. Ms. LaBarbera reasonably believed that passing her courses was the only requirement for graduation, based on the information provided by Kean at the time of enrolment. Kean's failure to disclose the comprehensive exam requirement at the outset altered the fundamental terms of the contract, for Ms. LaBarbera had chosen Kean based on its course-based examination process.

59. As a result of Defendant's breach, Ms. LaBarbera has suffered monetary damages, including tuition expenses in excess of $25,000, as well as non-monetary damages in the form of time lost and emotional distress from being subjected to unforeseen academic requirements.

60. These actions deprived Plaintiff of the fair and transparent process promised by the program and prevented her from completing her degree.

### COUNT IV: VIOLATION OF DUE PROCESS UNDER 42 U.S.C. § 1983
### – Failure to Provide Appeal Process

61. Plaintiff incorporates by reference all prior paragraphs as though fully stated herein.

62. After receiving her final failing grade in February 2021, Ms. LaBarbera attempted to initiate Kean's appeal process. Despite multiple inquiries and requests, Kean failed to provide Ms. LaBarbera with the necessary forms or any meaningful opportunity to contest the grade

63. Defendant Kean University violated Plaintiff's due process rights under the Fourteenth Amendment by depriving her of a constitutionally protected property interest in her education. As established in *Harris v. Blake*, 798 F.2d 419, *Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281., students have a property interest in continued enrollment, which includes

access to fair academic evaluation and the right to challenge adverse academic decisions. In this case, Plaintiff's request to initiate an appeal process after receiving a failing grade on her comprehensive exam was ignored, and the University failed to provide any meaningful opportunity for her to contest the decision. Unlike in *Harris v. Blake*, where the university offered avenues for appeal, Kean University's refusal to provide the necessary appeal forms or process deprived Plaintiff of the procedural protections to which she was entitled, thus violating her due process rights.

**COUNT V: CONSTRUCTIVE FRAUD**

64. All previous paragraphs are realleged and incorporated by reference

65. Kean, as an educational institution, owed a duty of care and fiduciary responsibility to Ms. LaBarbera, who relied on the University's representations and disclosures when enrolling in the doctoral program.

66. Kean gained an unfair advantage over Ms. LaBarbera by failing to disclose the comprehensive exam requirement and by administering the exam in a biased and opaque manner. Even if there was no intent to deceive, Kean's actions constituted constructive fraud due to the breach of trust and the unfair advantage obtained.

67. As a direct and proximate result of Kean's constructive fraud, Ms. LaBarbera has suffered financial losses, emotional distress, and the loss of professional opportunities. Ms. LaBarbera is entitled to compensatory damages, punitive damages, and any other relief deemed appropriate by the Court.

**COUNT VI: VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT (N.J.S.A. 56:8-1 ET SEQ.)**

68. All previous paragraphs are realleged and incorporated by reference

69. Kean engaged in deceptive practices by failing to disclose the comprehensive exam requirement, misrepresenting the nature of the doctoral program, and administering the exam in a biased and unfair manner.

70. At no time during the enrolment process did Defendant disclose the existence of a mandatory comprehensive exam ("comps"), a requirement critical to Ms. LaBarbera's ability to complete the program and graduate.

71. Defendant's failure to disclose this material requirement constitutes an unlawful practice under the New Jersey Consumer Fraud Act (N.J. Stat. § 56:8-1 et seq.), which prohibits deceptive or misleading business practices that cause harm to consumers.

72. Defendant engaged in an unfair and deceptive trade practice by failing to clearly disclose the comprehensive exam as a material requirement for graduation at the time of enrolment, and by deliberately omitting this requirement from course descriptions and promotional materials, inducing Ms. LaBarbera to enrol in the program under the false impression that she understood all necessary graduation requirements.

73. Ms. LaBarbera reasonably relied on Defendant's representations and omissions when deciding to enrol and invest over $25,000 in the program.

74. As a direct result of Defendant's unfair and deceptive conduct, Ms. LaBarbera has suffered financial harm, including the loss of tuition fees and expenses, as well as emotional distress and wasted time due to the unforeseen burden of additional requirements.

75. Defendant's conduct is in violation of the New Jersey Consumer Fraud Act, which provides for treble damages, attorney's fees, and costs for consumers who suffer as a result of unlawful practices.

**PRAYER FOR RELIEF**

76. WHEREFORE, Plaintiff requests judgment against Defendants as follows:

A. Compensatory damages in excess of $150,000.00, for emotional distress and financial losses.

Including:

a. Awarding Judith LaBarbera money damages, including costs, for Defendant's breach of contract, which prevented Plaintiff from obtaining her doctoral degree and caused significant financial and professional harm.

c. Awarding Judith LaBarbera money damages, including costs, for Defendant's fraudulent misrepresentations, which induced Plaintiff to enrol in a program that did not provide the promised education and degree.

e. Awarding Judith LaBarbera money damages, including costs, for Defendant's constructive fraud, which unfairly advantaged the Defendant to the Plaintiff's detriment.

f. Awarding Judith LaBarbera treble damages, as provided under the New Jersey Consumer Fraud Act, for Defendant's deceptive practices in connection with the sale and advertisement of educational services.

g. Awarding Judith LaBarbera money damages, including costs, for Defendant's violation of the federal statutes and her constitutional right.

B. Injunctive relief requiring Kean University to reconsider Plaintiff's grades under a fair process or have them rechecked by an independent reviewer;

C. Punitive damages as appropriate under the law;

D. Attorneys' fees, costs, and any further relief this Court deems just and equitable.

Respectfully submitted,

THE LENTO LAW GROUP

BY: s/ Lawrence A. Katz
LAWRENCE A. KATZ
Counsel for Plaintiff
BEOWULF BUILDING
1814 East Route 70 - Suite 321
Cherry Hill, NJ 08003
Phone: 856.652.2000  EXT 497
Fax: 856.375.1010
lakatz@lentolawgroup.com