# Exhibit A

| Date | Event |
|---|---|
| 11-20-2020 | First letter asking for assistance to graduate |
| 11-23-2020 | Dean asks if I received the handbook and said she will investigate my inquiry |
| 12-07-2022 | I followed up with Dean Thorpe |
| 12-08-2020 | Dean requests to talk on Friday, December 11, 2020 |
| 12-10-2022 | I request Dean Thorpe in writing asking what my next steps in acquiring my degree |
| 12-17-2020 | I ask Dean Thorpe to follow up on my request "what are my next steps" |
| 12-19-2020 | Dean Thorpe requests from my if I had additional documentation that I would like to submit and informs me that the passing of the Comprehensive Exam is a requirement to graduate |
| 01-07-2021 | I inquired about any accommodations that could be granted due to the COVID-19 crisis |
| 01-24-2021 | I asked if there options that could be granted to me |
| 01-26-2021 | Dean Thorpe notifies me that I was made aware of this Comprehensive Exam during my interview, during open houses and when I received my Handbook. Dean Thorpe asks me "Is there a particular accommodation to the department's attention" |
| 01-26-2021 | I explained again that I never received notice about the Comprehensive Exam. I then requested that she provide me with a date and time to meet though ZOOM |
| 02-23-2021 | Ilaf Satter, Dean Thorpe's assistance, invite me to a Zoom meeting. We met approximately for 30 minutes. |
| 03-18-2021 | I thanked Dean Thorpe for meeting with me. After receiving written feedback form Dr. Patten. I request from Dean Thorpe if there was an appeal application. I asked Dean Thorpe again if there was any appeal form. I began researching throughout the Kean website for an appeal form. |
| 03-19-2021 | Dean Thorpe notifies me that her assistant, Ms. Satter will notify me when she locates an appeal form. |
| 03-23-2021 | I follow-up with Ms. Satter if she located an appeal form |
| 03-23-2021 | Ms. Sattar stated that she is looking into the protocol and will send me an update soon |
| 03-24-2021 | I ask Ms. Sattar "Is there a time-frame for the appeal". I notify Ms. Sattar that I cannot find any appeal form on the Kean website |
| 03-24-2021 | Ms. Sattar responds to my e-mail and tells me "They are looking into the protocol |
| 03-31-2021 | I requested another meeting with Dean Thorpe |
| 04-06-2021 | Ms. Sattar writes, "I'll let you know |
| 04-12-2021 | I request again to Ms. Sattar, that I would like to meet with Dean Thorpe regarding the appeal process |
| 04-13-2021 | I e-mail Dean Thorpe directly requesting to meet with her again |
| 06-16-2021 | Dean Thorpe sends me a document that there is no further provisions for any appeal |
| 1/22/23 | *Letter to President Lamont Repollet* |

# Exhibit B

Judith LaBarbera

42 Republic Drive

Monroe, New Jersey 08831

LaBarbju@Kean.edu

November 20, 2020

Dear Dean Christine Thorpe,

My name is Judith LaBarbera. I am writing to you to request your assistance as I have been notified that I cannot graduate from the SLP Clinical Doctoral program. I took my comps for the third time on 10/4/2020 and was notified via email that I did not pass and that I had the right to appeal. The appeal led me to the appeal process for the graduate comps. I do not believe there is an accessible and published appeal process for appealing on the doctoral level.

I want to provide some background information. I want you to know that I entered the clinical doctoral program in Fall 2018. At the time of my interview and admission to the program, I was unaware that a written, comprehensive examination is a final requirement. I distinctly remember that the first time I was made aware of the comps was in Fall 2019 when we were told that there was a program handbook, and we were required to sign that we were notified. To date, on the Kean website, there remains no written notification that the graduate comps are a requirement of the program. I also do not have a copy of the handbook. I entered the program, believing that passing the courses was the requirement for graduation.

To date, I believe that I am in good standing based upon the published requirements on the Kean website. I do believe that, based on the accessible and published program requirements, I am eligible to graduate.

The comps were first administered on June 6, 2020, to which I was notified I did not pass. I then retook them on August 10, 2020, and once again, I was notified with written feedback from Dr. Patten why I did not pass. I then practiced answering and responding to questions with Dr. Patten and received great feedback. I took my third comps on 10/4/2020.

I am a speech supervisor in the New York City Department of Education. I supervise approximately 80 speech-language pathologists in 21 schools that serve over five-thousand children ranging from pre-school to high-school. When COVID-19 happened, my professional world, like many, was turned upside down. Getting access to teletherapy, preparing clinicians, working with families and principals in many different schools became the priority. This work continued throughout the summer when I was a supervisor throughout New York City to many speech-language pathologists that I had never supervised who needed my support to service many students. At that time, I can say I was not fully prepared to take the comprehensive exam.

**Exhibit C**

E-Mailed to Dr. Thorpe on January 7

Dear Dean Thorpe,

I want to thank you for your email response on December 18, 2020, as I have been genuinely mourning the loss of my doctoral degree since the email notification in October that I did not pass the comprehensive examination. I am still in disbelief that I cannot graduate after two years and truly being invested based on a 4-question written comprehensive examination. As I have mentioned previously, I am a speech-language pathology supervisor who oversees 21 schools, 80 speech pathologists that service approximately 3,000 students. In this crisis, I am working around the clock to amend IEP's, get necessary technology, and communicate with administrators, students, families, and clinicians. During this pandemic, my job is to do whatever it takes to assist students and clinicians successfully.

Your email indicated that, as per the handbook, I have three attempts to take the written comprehensive examination. I was made aware of the written comprehensive requirement for one-year into the program and made aware of a handbook. Is there any consideration that can be given to the fact that I entered the program unaware of the written comprehensive requirements? I have double-checked myself using the doctoral program website, which I initially used to apply to the program. To date, completing and passing a written comprehensive examination is not a published/advertised requirement of the clinical doctoral program at Kean University. Yet, it is the reason why I do not have my degree.

March 2020, the Covid-19 pandemic swept our country, and I, along with the rest of the world, was inundated and overwhelmed. There is no doubt that this crisis continues to harm my ability to learn and study because we were forced to be virtual. I have always been an in-person learner and benefit from face-to-face conferences and meetings. This is no longer possible and a contributor to my difficulty. I receive many emails from Kean regarding accommodations that can be made for undergraduate and graduate students based on the circumstances. Are there any accommodations that can be made for my circumstances during this crisis?

In conclusion, is it your position that I am held to the requirements in a handbook, not on a website provided to me one year after I began the program. Also, are there any accommodations that can be provided based on the current Covid-19 crisis?

Once again, I sincerely appreciate your time. It is my goal to complete this program. I wish you a prosperous and joyous 2021.

Thank you for your time and attention.

Exhibit D

June 4, 2021

Dear Dean Thorpe,

I thought it wise to make a formal statement to account for the results of my comprehensive examination and suggest a path toward completing my degree in a manner that satisfies the parties involved and aligns with the university's educational principles.

Let me begin by outlining my understanding of why I was not awarded a passing grade on my comprehensive examination. I believe that the perceived inadequacy of my examination responses did not follow from my lack of empirical or clinical knowledge but from a lack of clarity surrounding the implicit demands of the questions themselves. Put differently, it was unclear what the questioner considered to be the elements of an ideal answer, how the questioner weighed the importance of each of those elements, and where the questioner distinguished between relevant and gratuitous information. Each piece of feedback indicated that a specific piece of information was absent from my answer. Yet the necessary inclusion of this information was neither indicated by the question itself nor inherent in the clinical consensus surrounding the subject matter. Accordingly, the inclusion of the information could only be surmised from a sense of the questioner's unstated expectations regarding the preferred response.

The feedback I received after my second sitting for the examination — the first and most substantive comments I received regarding my questions — is emblematic. In response to my answer to Question 1, I was told: "These statements are not incorrect, but they certainly do not support a full definition." It is telling that no further elaboration on the elements of a "full definition" is included in the feedback. If there were a robust consensus in the clinical literature surrounding core definitional elements, those elements, having become orthodoxies, would be stated in the feedback. They are absent from the feedback, precisely because they are not products of a clinical consensus; they are products of the questioner's specific understanding of a "full definition", which cannot be considered a fair reference point of an ideal answer. My responses were not evaluated based on my grasp of the established consensus but based on my fidelity to the questioner's view. This pattern continued in Question 3, which asked, "If the essential elements of the Principals of Motor Learning (PML) include "Watch me, listen, do as I do, and motivation, attention, and feedback, how is this different from traditional articulation therapy." My answer to this question was met with the following feedback, "You do not effectively clarify the difference between traditional articulation therapy, drilling, motor programming through repetition and PML, particularly as traditional articulation therapy starts with sounds in isolation rather than in words." The question warranted a discussion of the difference between PML and traditional articulation therapy, yet the feedback concerns the difference between "traditional articulation therapy, drilling, motor programming through repetition and PML." These additional distinctions are not internal to the nature of the topics under consideration; only through an intimate knowledge of the questioner's view of those topics could one glean from the stated question the specific issues that the questioner thought necessary to address. The feedback I received following my third attempt at the examination continues in this manner, although they provide too little substance for discussion here, as the majority of them are under three sentences in length — a fact that suggests an inability to justify the discrepancy between my response and the established consensus.

These breakdowns in the evaluation process occurred within a unique institutional setting. Establishing the questioner's view of an examination topic as the reference point of an ideal answer is a problem endemic to comprehensive examinations. However, in most cases, comprehensive examinations are administered at the end of a program during which a student has become intimately familiar with the instructor's view of disciplinary topics through coursework, feedback, and informal dialogues. The clinical and research-oriented nature of this program foreclosed a familiarity with the instructor's views. In my particular case, I attempted to cultivate that familiarity through regular meetings with my questioner in the weeks surrounding the examination. Still, it proved untenable to recreate a years-long process of teacher-instructor understanding during this abbreviated period. Given the novelty of the comprehensive examination as a component of this program, there are grounds to consider the possibility that the structure of the program and the nature of the examination are not aligned in the manner of conventional doctoral studies, leading to unworkable expectations regarding the ability of students to apprehend unstated instructor expectations that inhere in examination questions. While it may be reasonable to demand that doctoral students in non-clinical programs be able to grasp the questions-within-a-question posed during a comprehensive examination, these same demands are far less reasonable in the context of a clinical research program. As the program looks to the future and makes changes to its design in pursuit of continued development, I hope it is willing to afford students like myself a margin of error as they adjust to those changes, especially when those changes are instituted during the course of study.

In light of these concerns, I propose the following path forward. During the program, I developed a clinical research paper that reflects my grasp of the established consensus surrounding disciplinary topics and that demonstrates my fulfillment of core program objectives. I suggest that one or more faculty members with relevant expertise evaluate the paper and assess my fluency in clinical knowledge and my ability to operationalize that knowledge in a research program. This form of evaluation closely aligns with the clinical nature of the program and obviates the aforementioned intellectual concerns regarding unstated questioner expectations. It presents minimal obligations to faculty members and university staff and removes the need to administer a timed examination. If accepted, it would validate my completion of program objectives in a manner that aligns with the university's educational principles, and it would speak to a commitment to student development during a period marked by great uncertainty. Given Dr. Namazi and Dr. Patten's responses to my examination questions, and given interpersonal tensions between Dr. Namazi and I that I have chosen not to disclose here, I suggest that the faculty committee include, for example, Dr. Catherine Crowley and Dr. Ruth Stoeckel. I am willing to personally contact faculty members to explain my situation, create a formal evaluation proposal for the university's records, and take any steps required to reduce the workload that attends an exception to an institutional rule.

I look forward to hearing from you and to becoming an alumnus of an outstanding program.

Sincerely,

*Judith LaBarbera*

Judith LaBarbera

**Exhibit E**

# KEAN

June 15, 2021

Judith LaBarbera
42 Republic Drive
Monroe, New Jersey 08831
Student ID: 1096861

Dear Judith:

This letter is in response to your appeal for continued enrollment in the SLPD program.

In review of the program's policies, the SLPD program requires a "B" or better grade in all courses. You have "C" grade in the following courses:

1. CDD 7000
2. CDD 7002
3. CDD 7004

The SLPD program also requires a student to successfully complete the Comprehensive Examination to qualify for graduation. Unfortunately, you have not been able to pass the exam during your multiple attempts.

As per the Graduate Catalog, "*In the event of failure, a student may be permitted to take a second comprehensive examination subject to the approval of the program coordinator. In the event of a second failure, a student may appeal to take the examination for a third and final time.*" Therefore, based on the university policy, you are not permitted to retake the comprehensive exam a fourth time.

Since you have exhausted your attempts at taking the comprehensive exam and you are yet to complete the SLPD program coursework requirements, we regret to inform you that you cannot complete the SLPD program at Kean University. Given the policy, this decision is final and there is no further provision for an appeal. In accordance with this decision and University policy, your official dismissal is upheld and you will not be eligible to enroll in any courses at Kean University.

Although your academic goals were not able to be realized at Kean University, I wish you the best of luck in all of your future endeavors.

Sincerely,

*Christine W. Thorpe*

Christine W. Thorpe EdD, EdM, CHES
Dean
Nathan Weiss Graduate College

Cc: Dr. Mahchid Namazi, Executive Director
    Dr. Sarah Patten, Assistant Professor

---

Kean University • 1000 Morris Avenue, Union, New Jersey 07083 • (908) 737-5326 • www.kean.edu

2/25/21

*when did Dr. Patten send this e-mail*

(F)

Hello Judy,

Thank you for your email.
I believe that in your meeting with Dr. Thorpe there was an agreement that you should reach out to me for feedback regarding your final comprehensive exam. I am not in the position to offer you a grade per question or a breakdown of the comments per question or the rubric as these elements were not discussed in your meeting with Dr. Thorpe and are not generally disclosed to students following the completion of the comprehensive exam.

You have had more detailed feedback following your first two submissions in order to support your remediation and study toward the subsequent examination attempts. As this was your last attempt, remediation is no longer an option, and alongside your peers, you were offered the pass/fail decision.

However, I am happy to offer you an overview of the comments made by the three examiners.

I can confirm that all the three examiners independently graded your submission at the C/C+ grade border as a whole. This was unanimous and identified a submission which fell significantly below the threshold pass grade. This submission was, however, a substantial improvement on the two previous attempts. Agreed comments included:

1. Multiple grammatical and spelling errors throughout undermined intended meaning on occasions.
2. The questions were not always answered - particularly when the question asked for an explanation. Information was offered in these instances but there was no explanation as to how this linked to the main point of the question.
3. There remained a lack of clarity between speech delay and disorder - this is something that we would expect a MA student to achieve (also an element we had worked upon, although two of the examiners were not aware of this).
4. The overreliance and reporting of the requirement to use the DEAP was problematic. There are other assessments available for use which were not considered or the reason not to use them identified.
5. There are several inaccuracies presented e.g. traditional therapy is not linked to a core of 20 words as indicated. The difference between therapy approaches remained unclear - the arguments for one approach could also be argued to support the other. This was

    problematic when the question specifically required clarification of the differences between the approaches.
6. There was some inconsistency between the information offered in the original paper and the responses offered to the questions (which were based upon the information in the original paper).
7. Some of the conclusions offered were unclear and did not support the question response.

I hope this information is helpful and meets the remit as discussed between yourself and Dr. Thorpe.

Take care and stay safe and well.

2/8/2022



?

On February 8, 2022, Ms. Catricia Shaw of the OAAP met with Ms. Judith LaBarbera, student in the Speech and Language Pathology (SLP) doctoral program, and her attorney, Mr. Howard Mendelson. At the onset of the interview, Ms. Shaw discussed the *New Jersey State Policy Prohibiting Discrimination in the Workplace* (State Policy) and procedures; and emphasized confidentiality and the prohibition of retaliation. Copies of the documents were provided electronically.

Ms. LaBarbera explained the details of her complaint submitted on her behalf by Mr. Mendelson. Ms. LaBarbera alleged that Dr. Machid Namazi, Executive Director of School of Communication Disorders and Deafness, discriminated against her (LaBarbera) based on age and familial status. Ms. LaBarbera stated that she also requested for Dr. Christine Thorpe, Dean of the Nathan Weiss Graduate College, to review this matter as an accommodation for her (LaBarbera). Ms. LaBarbera stated that she also requested that Dr. Thorpe assign someone else to grade Ms. LaBarbera's comprehensive exam after she (LaBarbera) took it for a third time. Ms. Shaw also asked Ms. LaBarbera to review and provide feedback on the statements attached to the complaint submitted by Mr. Mendelson.

Regarding the letter dated November 20, 2020, addressed to Dr. Thorpe, Ms. LaBarbera stated that she (LaBarbera), along with her classmates received the SLP doctoral handbook after one year of being in the program. Ms. LaBarbera stated that Dr. Sarah Patten distributed the handbook to the students in her (LaBarbera) cohort in September 2019. Ms. LaBarbera stated that Dr. Patten reviewed the handbook with the class, and this was the first time the students began discussing the need to take a comprehensive exam. Ms. LaBarbera stated that she signed an acknowledgment of receipt for the Handbook and would provide a copy to the OAAP. Ms. LaBarbera stated that she, along with others in the program, spoke up about the need to take a comprehensive exam for the doctoral program as it had a research foundation, and everyone successfully completed a comprehensive exam for their Masters' degree.

Commented [LJ1]: See Exhibit F, F1

Regarding the December 2020 email, Ms. LaBarbera stated that she never received a response. Ms. LaBarbera stated that in the email she was requesting that someone else other than Dr. Namazi grade the exam as an accommodation. Ms. LaBarbera stated that she had never requested or received accommodations during her higher education career, but at this time, she was having issues regarding the transition to distance technology in response to the COVID-19 pandemic. She was also managing her daughter and son-in-law moving in, along with the grandchildren. Ms. LaBarbera stated that early in the program, she was referred to the Writing Center by Dr. Namazi to assist with the writing of her (LaBarbera) dissertation literature review. Ms. LaBarbera stated that she went to the Writing Center; however, she was told that there was no issue with her writing.

Commented [LJ2]: See Exhibit D

Commented [LJ3]: See Exhibit C

Ms. LaBarbera was asked about the interpersonal tensions she mentioned regarding Dr. Namazi. Ms. LaBarbera stated that she felt disregarded by Dr. Namazi and she (LaBarbera) was not being treated like the other students in the program. Ms. LaBarbera stated that she felt as though she was never going to be success in the program. Ms.

LaBarbera stated that the cohort started with 11 students; however, one left due to family issues (Michael). Ms. LaBarbera stated that many of the students in the doctoral program graduated from Kean and their ages ranged from the mid to late 20s to approximately 49 years of age. Ms. LaBarbera stated that she is currently 61 years of age.

> Commented [LJ4]: O.Brien
>
> Commented [LJ5]: 40 years

Ms. LaBarbera stated that she received an email from Dr. Namazi, where Dr. Namazi shared that she (Namazi) did not appreciate the way that Ms. LaBarbera reflected on a speaker in a class. Ms. LaBarbera stated that she has also received three "C's" on her transcript, all of which were given by Dr. Namazi. Ms. LaBarbera stated that she was not referred to the Academic Review Committee due to the grades, but she did file a grade grievance. Ms. LaBarbera stated that she never heard from the Dean's Office regarding the grade appeal process, and she would provide documentation regarding the communication.

> Commented [LJ6]: See Exhibit H, H1
>
> Commented [LJ7]: See Exhibit M
>
> Commented [LJ8]: I never filed a grade grievance
>
> Commented [LJ9]: See Exhibit A

Ms. LaBarbera stated that the doctoral comprehensive exam consisted of the same four questions that required written responses. Ms. LaBarbera stated that there were no preparation sessions offered prior to the taking of the exam. Ms. LaBarbera stated that Dr. Patten told her (LaBarbera) that she (LaBarbera) was the only student who failed the exam. Ms. LaBarbera stated that she received limited feedback from the exam, which did not allow her to properly prepare for the retests. Ms. LaBarbera stated that for her final attempt of the exam, she requested that someone external from the University review her work, as Drs. Namazi and Patten are the only full-time instructors for the doctoral program.

> Commented [LJ10]: From cohort 2
>
> Commented [LJ11]: See Exhibit D

**Confidentiality Notice:** This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and privileged information. This mess

Judith LaBarbera<br>
42 Republic Place<br>
Monroe, New Jersey<br>
08831<br>
917-816-1745<br>
JudyLaBarbera@gmail.com

January 22, 2023

Ms. Maris Henson
Executive Assistant
Office of President
Dr. Lamont Repollet
Kean University

Dear Ms. Henson,

I am writing this letter as a professional outreach to obtain my clinical doctoral degree in Speech & Language Pathology. I have communicated through the University's chain of command and reached out to Dr. Namazi and Dr. Patten to better understand why I did not pass a three-question essay graded subjectively. After being denied again, I requested that I meet with Dean Thorpe. After a brief meeting and 23 attempts between November 20, 2020, through June 16, 2021, I received an email stating, "No further provisions for any appeal" would be considered.

After not receiving any requested accommodations, I retained Mr. Howard Mendelson to mediate with Kean University. On February 8, 2022, we met with Ms. Catricia Shaw of the Office of Affirmative Action Program and discussed all the incidents during and after my acceptance at Kean University. Again, after we completed the initial intake, my attorney and I received no correspondence from Kean University.

On October 31, 2022, I visited Ms. Shaw's office at Townsend Hall, Room 116. Ms. Shaw agreed to meet me, and I asked why I had not received correspondence from myself or my attorney, Mr. Mendelson. Ms. Shaw explained that she documented all the information from our meeting and was now in the hands of Legal Counsel Kristin Ganley and Chief of Staff Audrey Kelly. Shortly after, Mr. Mendelson contacted the office, and I am still waiting for someone to get back to my attorney.

After being in the field of Speech & Language Pathology for 25 years and wanting to pursue my clinical doctoral degree, spending approximately $25,000 for a degree that Kean University is unwilling to look at my documentation in an objective framework to determine whether through an accommodation, I can obtain my clinical doctoral degree in Speech & Language Pathology.

Thank you for your time in this matter, and I am confident that Kean University will allow me to provide the documentation that will justify my clinical doctoral degree.

*Judith LaBarbera* M.A. CCC-SLP
Supervisor of Speech Services
New York City Department of Education